Good morning. Before we start the clock let me just see how we're going to do the time. The way we planned it since we only had 10 minutes is I was going to do the initial argument and then Mr. Burstyn would do the rebuttal that way we don't so I'm gonna try to leave more time than normal for the rebuttal I'll try to sit down in about the five or six minute mark and then let Mr. Burstyn take the rest of the time in rebuttal. Okay so you're you're trying to give him at least four minutes? Yes. Okay all right let me tell you how that's gonna work so I know when you're sitting there and he just goes into rapture and goes crazy then you're thinking like he's taking all of my time all right if we're asking him questions if if we feel he's done in six minutes I'll stop them okay but if we have other questions I'll make that on our nickel and I promise you'll get four minutes all right so remove that stress and if I feel that it requires any compensation for the appellee then to answer the questions I'll handle it that way so I'll make sure that you get to say what you want to say and we get our questions answered but that doesn't mean you get to talk forever. I won't. Okay so give us your name and appearance. My name is Ben Coleman I represent Appellant Artak of Sepian. I'd like to jump into the guidelines issue and the government's theory as to why the guidelines two-level increase applies has shifted somewhat throughout the course of the proceedings but the way I understand their theory now is that the two-level increase was based on copies of driver's licenses that were put in the beneficiaries files. There's two main fundamental flaws with that theory one is factual and one is legal. The factual problem is that a copy of a driver's license is not an authentication feature where you know the government mentions holograms well a copy of a driver's license doesn't have a hologram. The only thing that a copy of a driver's license manifests is the embedded means of identification meaning the person's name. What I understand the court did was okay explain that it applied the two-level for use of an authentication feature to conceal the fraud and that's distinct from appellate separate conduct that is involved in the use of means of identification to implement the fraud. If the underlying conduct is distinct why is there a concern about double counting for conduct related to using a means of identification? The distinct conduct basis does not apply based on this court's decision in the United States versus Aquino which addressed a similar guideline provision and what that case basically says is that these types of commentary to the guidelines would say don't don't do this twice that you can't get around it by saying for example that was a gun case that well the in that case it was a 924 C consecutive that was based on one gun and then the two-level increase was based on a different gun. This court said no you can't do that you just don't apply the increase it doesn't matter whether it's different conduct different guns different identifications that's not that doesn't get you around this particular commentary. But it seems to me like in that case the second gun or the additional guns were more closely tethered to the scope of relevant conduct or scheme. Here the district court really focused on the complexity of the scheme and talked about the fact that the consecutive sentence was really for the perpetration of this sophisticated scheme which didn't need this additional conduct of preparing and make everything look legitimate. So he thought from what I can discern from his comments that it was qualitatively different. So does that take it outside of the Aquino analogy? I don't think so because the guideline itself says don't apply an increase even for relevant conduct and concealing the fraud is relevant conduct. So it doesn't matter whether it's two separate types of conduct and in fact we said in the 8th Circuit case for example where a judge used one said the 1028A was for one piece of identification that was a counterfeit driver's license but then he used a two-level increase for a counterfeit credit card that was the government's theory and the 8th Circuit said no you don't get to you don't get to base it on different types of conduct or different types of identifications. The guideline is clear don't apply it for it don't use this for any increase at all. They get the two year consecutive that accounts for this type of conduct and we've got two 7th Circuit cases both Doss and Zhang that we've cited which are right on point and they refute the government's position that a something a thing can't be both an authentication feature and a means of identification. I mean their reliance on these copies of driver's licenses are simply means of identification. What if we were to find that the driver's licenses are identification documents and not means of identification? Do you lose them? No we don't lose because number one you don't you can't get the two-level bump for an identification document the guideline itself does not it would only apply to an authentication feature not an identification document but number two the 7th Circuit case has made clear that something can be both an identification document and a means of identification both and that's what a driver's license is it's both a means of identification and an identification document and the guy in the commentary says don't apply the two-level increase in that in that scenario. So under your theory if a defendant uses a means of identification at some point during the execution of an aggravated identity theft wouldn't that immunize any use of an authentication feature from the two-level enhancement no matter how attenuated its connection to the defendant's use of means of identification? I don't think so I mean I think that there are you know potentially examples where they could still get the two-level increase and the government has mentioned holograms for example I mean we don't have a hologram situation here because we're just dealing with a copy but potentially in some other case perhaps if some hologram is being used the government might be able to say well look that's really the use of an authentication feature that's distinct from a means of identification but we don't have that situation here we have copies of driver's license so it's it's the same thing a copy of the driver's license all that is is the I agree with the points made by your honor judges Callahan and Nguyen that the conduct was attenuated and that alone supports the enhancement but I would note that there actually isn't even well that would be a point I would make then but I would note also that the enhancement separately is also appropriate because it was for authentication features an authentication feature is not the same thing as a means of identification you break that down yes in response to the point that the conduct is attenuated and we discussed with counsel whether this falls within the scope of relevant conduct right he his response at that point is that this falls within the scope of relevant conduct and so the application note is very clear that you don't double count if conduct falls within the scope of relevant conduct so what is your counter response to that I have two responses the first is you don't double count for means of identification that falls within relevant conduct so I suppose arguably if the district court it said well there are also names and insurance numbers in the patient files and there might be an argument but that's not what the district court did here did it based on the identification documents and the authentication features I would also direct so that's the second point really I see it as two distinct arguments one is that well I'm not double counting because this really is so attenuated from the core scheme right so there and so therefore it's not impermissible double counting there's a certain logic to that but if the application note says look at the scope of relevant conduct broadly the effort to conceal is a part of the scheme so if look at it that way then that and I think it shores up the argument that it's double counting the second argument and I see it as analytically distinct is whether this authentication authentication feature is really the same as a means of identification so why don't you address that yes your honor there are three lines of cases that I believe each independently demonstrate that to be 1.602 is narrow in the sense that it only applies to enhancement specifically for the possession use or transfer of a means of identification so for example if you look at the Taylor decision out of the 11th circuit that decision held that producing a means of identification in that case an access device was not barred by the enhancement obviously even though you have to possess a means of identification to produce it and if you look at page 671 it said by producing unauthorized access devices the conspirators furthered the prohibited conduct to continue which was precisely the reasoning of the district court here so what is the authentication feature that the government's relying on in this case the authentication feature would be those features on the driver's license in particular but also the other identification cards and not just relying on that that would innate that makes them appear to copies what about counsel's point that photocopies don't count well first of all the witness testimony established that the identity theft victims were tricked into providing the actual copies of their cards at the clinic and that the photocopies were made from those actual copies so the evidence does establish that they actually possessed and used the actual doc identification documents themselves in any event I'm not aware of any authority that says that a photocopy of an authentication feature isn't an authentication feature the purpose of photocopying them was to show them to the auditors to say look these people are really here they were really legitimate patients and the authentication features on the photocopy serve that purpose just as in the other I cited applying that enhancement by making them look legitimate that would be like the Baker and the Rodriguez decisions that held that providing a driver's license for mortgage fraud requires use of an authentication feature because it it obviously the driver's licenses could only serve their nefarious purpose as one court said if they look valid when they do that relative to when they initially have the is do do they do they do this in response to something that's going on or someone that's looking at their files or how does that how does that come about so in order to conceal the scheme the conspirators had to maintain the appearance of a legitimate clinic and so for all the patients quote-unquote the recruited or the native victims they had to keep real patient files that meant they had to keep what appeared to be real doctor's notes and also real copies of the identification documents which as was noted previously wasn't necessary to the as part of the concealment from the auditors particularly to thwart reports by identity theft victims that their identities had been stolen to make it look like they had been there and then in some instances to follow it up and say that these were elderly victims who have dementia but here are the documents that prove they were here we have their driver's license for example I do want to follow up on two other lines of cases that that show that to be 1.6 is narrow in the prior opinion in this case the defendants argued that the victim enhancement was precluded because the individuals were only victimized by use of the means of identification so the two intertwined but this court rejected that argument it held no it was for the number of victims not for the means of identification so under the government's theory let's assume that there's a fraudulent scheme perpetrated solely by the use of a driver's license so we're not going to mix it up with medical Medicare card Social Security cards and so forth so somebody can take a driver's license present it use or basically use a driver's license number and the name that's reflected on there you could you could impose an enhancement or you can you can essentially impose a consecutive sentence based on that and then you can parse out the hologram on that very same identification document and impose a an enhancement under to be 1.1 for that yes would the enhancement apply in that well I think that one important preface is obviously those are not the facts here and the district court found that the identification documents authentication features were specifically used for an entirely separate aspect of the scheme so that scenario really doesn't apply here the court and I need to address that issue if the district court found that authentication features were specifically used by the offenders for the purpose of facilitating the scheme then I suppose yes it would apply or the recognizes district courts extraordinary discretion to make those determinations but that's not what happened here and the district court was well within its discretion to apply the enhancement on the facts here I do I wonder the third line of cases just to get to that which is the Melendrez Dehaney and Nolte decisions the first two out of this circuit and the last out of the first circuit Melendrez held that a driver's license is not the same thing as a means of identification identification document in that case it address both Social Security cards and driver's license no we noted that identification documents are distinct from means of identification and in our decision on Johnson's first appeal we explained that driver's licenses qualify as identification documents right how can we reconcile those statements with 18 USC 1028 d7 which defines means of identification to be other things government issued driver's license it actually refers to driver's license numbers not driver's licenses and if you look at the Melendrez decision and the Nolte decision explicitly noted that at the distinction that there's a difference between a driver's license number or a passport number or Social Security number and the card itself and they recognize that the two are not the same in the Nolte distinction at page 337 the first circuit said this distinction is not nonsensical as Nolte claims because for example misusing a U.S. passport may give rise to additional or different harms than misusing only a passport number and again that's exactly what occurred here by misusing the authentication features they gave rise to additional harms they continued the allowed them to continue the scheme and it wasn't necessary to execute the scheme itself but that is why Zhang the Seventh Circuit decision cited by the defense is not good law in this case Zhang is the only decision that I'm aware of that even arguably expanded to 2B1.6 beyond its terms by holding that a passport is a means of identification because it's embedded with means of identification namely a name or passport number well Melendrez that stands for exactly the opposite conclusion and Dehaney extended that in a 2B1.6 context in this court and in Nolte the First Circuit explicitly rejected Zhang and adopted this court's holding in Melendrez agreeing that there is a very important distinction between the identification and one of the reasoning in Nolte is also applicable here which is that there are provisions in 1028 that use both the terms means of identification and identification documents and authentication features so 1028b2 applies an enhanced sentence for certain offenses that involve the use of a means of identification an authentication feature and an identification document for example if you were to say that a means of identification and authentication feature are simply the same then that is and Nolte recognized the same for other provisions in 1028 and of course this course is loathe to find that Congress used redundant terms in its statutes. So if we were to find that means of identification is synonymous with authentication feature you would lose then right? No well no if oh with identification features yes but even if Zhang is good law in this court an authentication feature is not a name or a number it's not embedded with a name or a number a symbol of the state of California is just a symbol of the state of California it's not an identification number assurance number for example so there simply is no reason to say that at least in some circumstances I mean it follows that at least in some circumstances authentication feature is not a means of identification and for that reason alone the district court to not abuse its discretion decision was not illogical or implausible or without support in the record. Counsel we kind of over time here but I have one question because you don't get to get up here again there is another argument here that the one of the sentences was substantively unreasonable. Yes substantive and reasonableness first of all looks to all the 3583 fact or 3553 factors not simply any individual one the district court amply explained why it believed that there was a distinction between the two defendants that statement is supported by the record the issue is not whether any judge here or defense counsel would have reached a different conclusion but simply whether it was reasonable and here not only was the district court specific statement of reasons reasonable it's for second of all overall assessment of the 3553 factors given to the scope of defendants bad conduct rendered the sentence reasonable and the sentence was below guidelines and as this court is recognized it's a very rare case where even within guidelines sentence will be deemed unreasonable so for all those reasons I submit the district court sentence was plainly reasonable. Any additional questions? All right. Thank you for your argument. Thank you. All right. Mr. Bernstein you have four minutes. Thank you your honors on behalf of Dr. Johnson. I think that. I gave him four. Thank you your honor. All right. I don't want. I promised you that so I got. And I appreciate it very much as does Dr. Johnson's kids so they got to keep the promises. Thank you your honor. I understand that too. I think we can say that this is perhaps unnecessarily complicated by the government's argument if I can point the court to page 21 of its brief and simplify this to quote the enhancement was based on the fact that the defendant and his co-conspirators maintained copies of the driver's licenses of their purported patients in the bogus patient files to try to fool auditors into believing that the prescriptions were written to legitimate patients. That's the government's written statement as to why the enhancer was imposed. That enhancement contains excuse me that statement contains two critical concessions either one renders the decision should be in our favor. So first the fact that it's copies. We're talking about authentic authentication features. In other words something that authenticates the document as being legitimate. For example a hologram. That's how you know it's not a fake ID that some college kid is using. It's got the hologram. Copies don't have holograms. You don't authenticate a copy. It's the copy of a driver's license. It doesn't have authentication. Well authentication features the law doesn't just talk about holograms. It talks about any kind of stylistic features that are that are somewhat unique. And even when you photocopy a hologram you can see on the photocopy that something's there. I mean perhaps your honor that's true but it's not you're not authenticating. It's not the authentic authentication feature for the copy. But there's a second concession in there. Even if the court disagrees with that point. There's a second concession in there. In that same sentence. The second concession is it was used to try to fool the auditors. And this is getting back to what the district court actually said. And Judge Callahan in the last case he said we're here, being the court, to review what's actually in front of us. And what is actually in front of us is the district court statement on page ER 170. The defendant and his co-conspirators possessed and used authentication features for purposes of concealment. We know beyond any doubt concealment is textbook relevant conduct. And as Judge Winn has I think pointed out, there are these two separate analytical issues here. But we're looking at what the district court ruled. This is not, we're deciding did the district court make a mistake, an honest mistake in its legal analysis. District court says I'm doing it based on concealment. Concealment is textbook, 1B1.3, relevant conduct. For that reason alone, especially given the concession by the government that it was used to conceal it. And the district court's finding that it's concealment. This has to go back. Because it's textbook relevant conduct. That is what the application note says explicitly. And for that reason it has to go back. For the copies it has to go back. Because everything the government actually points to, names, numbers, also fall within the definition of means of identification it has to go back. This court doesn't have to take this giant view of this case and decide forever and always are authentication features synonymous with means of identification. We're not asking the court to do that. Just simply what's before the court. ER 170, I'm applying this. I, district court, I'm applying this on the basis of concealment. Concealment is relevant conduct. Relevant conduct is no good under the application note. And for that reason we would ask the court to vacate and remand. Thank you, your honors. Perfect timing. Thank you both. This matter will stand submitted.
judges: Callahan, Nguyen, Ezra